```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

JEFFREY B. HALSTEAD and
TAMMY HALSTEAD, his wife,

    Plaintiffs

v.                                    Civil Action No.: 2:04-0951

TIMOTHY J. KALWEI, an individual, and
STATE AUTO PROPERTY & CASUALTY
INSURANCE COMPANY, an
insurance corporation

    Defendants

## MEMORANDUM OPINION AND ORDER

Pending before the court is the motion of defendant Timothy Kalwei, represented specially by counsel for defendant State Auto Property & Casualty Insurance Company ("State Auto"), seeking dismissal of the action for failure of the plaintiffs Jeffrey B. Halstead and Tammy Halstead to effect service upon him within 120 days of the filing of their complaint. Also pending before the court is the motion of State Auto seeking dismissal of the action or, in the alternative, summary judgment based principally upon the failure of the plaintiffs to serve Kalwei. Both of these motions were filed February 10, 2005.

I.

According to the allegations of plaintiffs' complaint, Mr. Halstead was operating a 1997 Ford K-Cab during the early afternoon of August 3, 2002, when a 1995 Chevy C-10 Van operated by Kalwei, a resident of the state of Missouri, collided with his vehicle, causing serious injuries to Mr. Halstead.  Compl. at ¶¶ 4-5.  Mr. Halstead was traveling northbound on Route 34 in Teays Valley, West Virginia, when he was struck at an intersection by Kalwei's vehicle as Kalwei attempted to access, presumably from the southbound turn lane of Route 34, the eastbound entrance ramp to I-64.  Id.  Plaintiffs contend that Kalwei operated his vehicle in a negligent manner, causing the accident and Mr. Halstead's resultant injuries.  Id. at ¶¶ 5-7.

In the course of its briefing, State Auto refers to the accident report completed by the investigating officer.  State Auto's Mot. Dismiss at Ex. A.  In addition to the officer's description of the scene, the report contains the statements of Kalwei and Mrs. Halstead.  Id. at p. 4.  Kalwei states that he entered the intersection following a line of traffic while the light was green.  Id.  Kalwei contends that traffic was stopped in the oncoming lanes but that Mr. Halstead's vehicle came through the intersection hitting him.  Id.  The investigating

officer, however, noted that Kalwei, upon questioning, did not know whether the traffic signal governing his lane had a green light or a green arrow.[1]  Id. at p. 3.

Mrs. Halstead, who appears not to have witnessed the collision, informed the investigating officer that Mr. Halstead did not remember the accident — an apparent result of his stated brain injury.  Id. at p. 4.  She, however, indicated that her son witnessed the event and that he claims Kalwei ran a red light.  The officer did not cite either driver as responsible for the collision.

In their response, plaintiffs have provided additional relevant facts concerning negotiations with Kalwei, his motorist carrier and State Auto.  Plaintiffs state that on December 18, 2003, Kalwei's motorist carrier, Shelter Mutual Insurance Company, offered its full policy limits of $100,000 to settle plaintiffs' claims arising from the collision.  Pl.'s Resp. at p. 2.  Prior to accepting this offer, plaintiffs sought from State Auto, their uninsured/underinsured motorist carrier, its

---

[1] The traffic signal governing Kalwei's lane had four lights: red, yellow, green, and a green turn arrow.  The traffic signal governing Mr. Halstead's lane had three lights: red, yellow and green.

approval of the settlement and waiver of subrogation rights.[2] Id.  This request was communicated, apparently in writing, to State Auto on January 2, 2004, and State Auto subsequently confirmed, in writing, its decision to approve the settlement and waive its subrogation rights.  Id. at Ex. 1.  Presumably, plaintiffs have released Kalwei and his motorist carrier from any further liability for the collision.  However, the settlement documents have not been provided to the court.

Subsequent to this settlement, plaintiffs made a demand on State Auto for the full underinsured benefits, $300,000, available to them.  Id. at p. 2.  Plaintiffs contend that thereafter State Auto mishandled their claim in numerous respects.  Compl. at Count II.

On July 28, 2004, the plaintiffs filed a two-count complaint in the circuit court of Putnam County, West Virginia.  Plaintiffs joined a negligence claim against Kalwei with UTPA and common law bad faith claims against State Auto, claiming State

---

[2] West Virginia Code § 33-6-31(f) provides, in relevant part, that "[a]n insurer paying a claim under the endorsement or provisions required by subsection (b) [uninsured or underinsured motorist coverage] of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made."

Auto improperly handled their claim for underinsured motorist benefits. Id. at Count II.

Pursuant to W. Va. Code § 33-6-31(d),[3] State Auto moves specially on behalf of Mr. Kalwei to dismiss the action as to him on the basis of the plaintiffs' failure to effect service upon him. Inasmuch as Kalwei has not properly been served, thereby entitling him to be dismissed from the action, and inasmuch further as State Auto contends that a judgment against Kalwei is a necessary prerequisite to any claim against it, State Auto contends it should be dismissed as well. It is the latter motion

---

[3]West Virginia Code § 33-6-31(d) provides that:

> Any insured intending to rely on the [uninsured or underinsured motorist] coverage required by subsection (b) of this section shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name.
>
> Nothing in this subsection shall prevent such owner or operator from employing counsel of his or her own choice and taking any action in his or her own interest in connection with such proceeding.

Id.

of State Auto seeking dismissal pursuant to Rule 12(b)(6) for failure of the plaintiffs to state a claim or, in the alternative, summary judgment that the parties dispute.

II.

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff.  <u>Mylan Laboratories, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1197 (1994) (citations omitted); <u>see also</u> <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 181 (4th Cir. 1996).  A court should not grant a Rule 12(b)(6) motion unless "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

III.

Rule 4(m) requires a plaintiff to effect service of the complaint and summons upon a defendant within 120 days after the filing of the complaint or risk the dismissal without prejudice of the action as to the unserved defendant.  Fed. R. Civ. P. 4(m).  A defendant may raise a failure to effect service of process by motion.  Fed. R. Civ. P. 4(m); Fed R. Civ. P. 12(b)(5).

The docket reflects that the complaint was filed July 28, 2004, and plaintiffs are not shown to have made any effort subsequent to the filing of the complaint to serve Kalwei.  State Auto has moved specially as allowed under W. Va. Code § 33-6-31(d) to dismiss the action against Kalwei.  Plaintiffs, in response to the motion, have not advanced a good reason as to why service was not effected.[4]  Kalwei is entitled to be dismissed without prejudice as a party defendant in this action inasmuch as plaintiffs have not effected service or otherwise presented a good reason to excuse their failure to effect service.

---

[4]Despite the fact that Kalwei is a non-resident, the collision occurred on a roadway in the State of West Virginia and Kalwei thus appears amenable to service of process through the Office of the Secretary of State inasmuch as Kalwei availed himself of the privilege of operating a motor vehicle on a roadway in West Virginia.  W. Va. Code § 56-3-31.

Although plaintiffs' failure to effect service upon Kalwei warrants his dismissal without prejudice, the real dispute between plaintiffs and State Auto concerns the necessity of Kalwei's presence in the action.  To succeed on their claims against it, State Auto contends that plaintiffs must first obtain a judgment against Kalwei.  Kalwei's dismissal from the action would negate this possibility and State Auto asserts that its dismissal is in turn warranted.  Plaintiffs counter that, under <u>Postlethwait v. Boston Old Colony Ins. Co.</u>, 432 S.E.2d 802 (W. Va. 1993), they may maintain a direct action against State Auto even in the absence of Kalwei.

Section 33-6-31(d), quoted <u>supra</u> at footnote 3, defines the rights of a motorist carrier when an uninsured or underinsured tortfeasor is sued by the policyholder.  Syl. Pt. 3, <u>State ex rel. Allstate Ins. Co. v. Karl</u>, 437 S.E.2d 749 (W. Va. 1993).  "The purpose of W. Va. Code § 33-6-31(d) is to protect an uninsured/underinsured insurance carrier from having a judgment entered against the uninsured/underinsured tortfeasor without the carrier having an opportunity to defend the suit."  <u>Postlethwait v. Boston Old Colony Insurance Co.</u>, 432 S.E.2d 802, 805 (W. Va. 1993).

8

Generally, an action may not be maintained directly by an insured against an uninsured/underinsured motorist carrier under § 33-6-31(d) until a judgment has first been obtained by the insured against the uninsured/underinsured tortfeasor.  Id. at Syl. Pt. 2.  However, in Postlethwait, the West Virginia Supreme Court of Appeals carved out a "narrow" exception, whose practical application is confined only to underinsured motorist claims, to the general rule.[5]  Id. at pp. 804 & 807.  Examining § 33-6-31(d), the court held that "§ 33-6-31(d) does not foreclose suit [against one's underinsured motorist carrier] by an insured who received the full amount of the tortfeasor's liability policy and also obtained a waiver of the uninsured/underinsured carrier's right of subrogation against the tortfeasor."  Id. at p. 804.  Under this exception, the court found that a requirement for the insured to secure a judgment against the tortfeasor "flies in the face of concepts of judicial economy."  Id.  Nevertheless, even though a direct action against the underinsured motorist carrier is allowed under the exception, Postlethwait holds that a plaintiff must still prove liability of

---

[5]In Postlethwait, the precipitating collision occurred in Maryland and the alleged tortfeasor was a resident of Massachusetts who was not otherwise amenable to service of process in the State of West Virginia.  The fact that Kalwei is susceptible to service is not dispositive.  Plumley v. May, 434 S.E.2d 406, 409-10 (W. Va. 1993).

the underinsured motorist as well as damages in excess of the policy limits of the underinsured's motorist carrier.  Id.

The two salient prerequisite facts necessary for an insured to proceed under the exception established in Postlethwait are a settlement with the underinsured motorist for the full limits of his policy's coverage and a waiver of the rights to subrogation of the insured's motorist carrier.  State Auto suggests that Postlethwait contains a third prerequisite — the existence of a "known" tortfeasor.  Inasmuch as State Auto postulates that the liability of the purported tortfeasor, Kalwei, was not readily discernable from the known facts and further speculates that the underlying settlement was extended by Kalwei's insurer for considerations other than an affirmative assessment of Kalwei's liability for the collision, State Auto contends that Postlethwait is inapplicable, apparently because there is no admitted or adjudicated tortfeasor.  This contention is without merit.  Postlethwait expresses no such limitation and, as noted, Postlethwait explicitly holds that the insured still bears the burden of establishing liability on the part of the underinsured motorist despite the underinsured motorist's absence from the action, thereby rejecting any inference that liability of the underinsured motorist must be clearly established for the

exception to apply.

Here, plaintiffs contend that Kalwei's motorist carrier tendered the full limits of his policy and State Auto, plaintiffs' underinsured motorist carrier, waived its subrogation rights.  State Auto does not dispute any of these facts. Pursuant to <u>Postlethwait</u>, plaintiffs may thus pursue their claims against State Auto despite the absence of Kalwei; and State Auto may assert available defenses, including the defense that Kalwei was not liable for the collision in the first place.

State Auto, in the alternative, seeks summary judgment. A large portion of its alternative motion for dispositive relief is premised on State Auto's belief that Kalwei's dismissal serves as a substantive basis for its relief.  <u>Postlethwait</u> holds otherwise.[6]

---

[6]State Auto cites <u>Jordan v. National Grange Mut. Ins. Co.</u>, 393 S.E.2d 647 (W. Va. 1990), as support for its contention that a judgment is necessary against Kalwei.  In light of the subsequently decided <u>Postlethwait</u>, this contention is without merit.  Moreover, the holding of <u>Jordan</u> cited by State Auto pertains to an action brought pursuant to <u>Hayseeds, Inc. v. State Farm Fire & Casualty</u>, 352 S.E.2d 73 (W. Va. 1986) and <u>Marshall v. Saseen</u>, 450 S.E.2d 791 (W. Va. 1994), not to a UTPA claim. <u>Slider v. State Farm Mut. Auto. Ins. Co.</u>, 557 S.E.2d 883, 890 (W. Va. 2001).  Moreover, that holding of <u>Jordan</u> has been expanded by Syl. Pt. 4, <u>Miller v. Fluharty</u>, 500 S.E.2d 310 (W. Va. 1997). <u>Slider</u>, 557 S.E.2d at 889.  <u>Jordan</u> is no impediment to the maintenance of an action by an insured against his motorist carrier under the exception announced in <u>Postlethwait</u>.

State Auto, however, does contend that the gravamen of plaintiffs' UTPA and common law bad faith claims is whether Kalwei's liability was reasonably clear.  State Auto contends the parties agree, as evidenced by their agreement in the Rule 26(f) report that discovery was necessary on the issue of liability and by the information set forth in the accident report, that a dispute does exist as to Kalwei's liability for the collision.  At best, this evidence establishes that there is a genuine issue of material fact for a jury to resolve inasmuch as plaintiffs may still prove, notwithstanding evidence in the accident report to the contrary, that Kalwei entered the intersection without having the right of way, thereby causing the accident.  The court finds summary judgment is not warranted on the record before it as to plaintiffs' bad faith claims, both UTPA and common law.

IV.

For the reasons set forth, it is accordingly ORDERED that:

1.  Good cause for plaintiffs' failure to effect service on Kalwei not having been shown, defendant State Auto's motion, filed specially on behalf of defendant Kalwei, seeking dismissal of Kalwei for failure to effect service be, and it

hereby is, granted; however, entry of an order of dismissal of Kalwei without prejudice is deferred pending further order of the court.

      2. Defendant State Auto's motion to dismiss or in the alternative motion for summary judgment be, and it hereby is, denied.

      3. Defendant State Auto's motion for a stay pending a determination on the motion to dismiss be, and it hereby is, denied as moot.

      4. Plaintiffs' motion for a status conference, filed November 19, 2004, seeking to establish a schedule in this action, which schedule has since been established, be, and it hereby is, denied as moot.

      The Clerk is directed to forward copies of this written opinion to all counsel of record.

      DATED: June 1, 2005

      John T. Copenhaver, Jr.
      United States District Judge